## Thomas A. Cantwell, Appellee, v. John P. Harding, Appellant.

### Gen. No. 15,071

DECEIT—*what not defense to action of.* In an action for deceit arising from the purchase of corporate stock in which it is alleged that the value of such stock was falsely represented, it is no defense to say that the plaintiff before purchasing such stock should have examined the books of the corporaton which had issued the same, the action not being against the corporation but against a stockholder thereof who was disposing of his certificates.

Action of deceit. Appeal from the Circuit Court of Cook county; the Hon. P. W. GALLAGHER, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed May 19, 1910.

MATHER & HUTSON, for appellant.

MASON & MASON and WILLIAM P. BLACK, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment for $5,000 against appellant in an action for deceit. The amended declaration consists of two counts. In the first of these the plaintiff avers that on or about December 3, 1904, he purchased of defendant a third of the capital stock of the Titze & Mullen Manufacturing Co., a corporation, and paid therefor $5,000 in cash; that defendant promised him the said corporation was doing a good and large business, was clearing $20,000 a year profits, and that plaintiff could draw $1,800 a year salary as one of the officers of the corporation; that confiding in such promises of defendant, the plaintiff bought from him the said one-third of the stock of said corporation; that defendant deceived and defrauded plaintiff in that the corporation was not doing a good and large business and was not clearing $20,000 a year profit and was not in a position to pay $1,800 a year for salary, but had been insolvent for a long time previous to such

promise and had been doing business for a long time, to wit, one year, at a loss, and that in April or May, 1905, a petition in bankruptcy was filed against said corporation and the stock thereby became and was of no value to plaintiff. The second count is practically the same, setting forth said alleged promises, averring that defendant promised plaintiff that if plaintiff purchased the said stock he could draw $1,800 a year for acting as one of the officers of the corporation, with an additional averment that defendant well knew the corporation was not doing a good and large business and was not clearing $20,000 a year profit and was not in position to pay plaintiff such salary.

It is contended in behalf of defendant that in an action for deceit the party complaining of false representations cannot maintain the suit if he is capable of taking care of himself and exercising ordinary prudence in protecting himself, unless the proof shows he exercised such prudence; that plaintiff must prove not only the falsity of the representations but that defendant knew them to be false; that it must appear the false representations were relied upon, that false statements, which are matters of opinion only, are not actionable, that one seeking to rescind must do so promptly, and that there are errors in the instructions. These contentions, except as to alleged errors in the instructions, involve questions of fact. There is evidence tending to show that in 1904 the plaintiff was and had been for many years engaged in the lumber business; that his attention was first called to the stock in question by an advertisement of a "commercial broker" in a daily paper, the material part of which is as follows: "Manufacturing establishment, established years; clearing $20,000; offers one-third interest, salary $1,800; $5,000 required; strictest investigation;" that calling at the office of the broker at the place the advertisement designated, an appointment was made to meet the defendant; that at an interview following the defendant represented to plaintiff that

the corporation in question was making $20,000 a year and that appellee if he bought the defendant's stock could draw a salary of $1,800 a year; that defendant finally reduced his price to $5,000; that plaintiff asked for and received a statement of the corporation's assets and liabilities; that he met Mr. Mullen, whose name appears in the name of the corporation; that Mullen told him the corporation was doing a business of about $150,000 a year; that the statement given plaintiff showed a net surplus of $14,238.65; that plaintiff examined the statement at home that evening; that a few days before buying the stock he went with Mullen through the factory; that he was given to understand there were in the neighborhood of forty employes; that plaintiff called on defendant at the latter's saloon a number of times, and was told by defendant the stock was worth $5,500, that "they were making money there;" that defendant said he had other business and did not want to stay there, that his being in the saloon business affected the corporation's business in that brewers would not buy saloon fixtures from the concern because defendant would not buy their beer, and that "the stock was making money and he would not sell it only he was in the saloon business and it affected his trade." Plaintiff testifies he depended on defendant's statements, that he showed the latter the statement of the corporation referred to and discussed it with him; that he talked with defendant about the surplus of $14,238.65 shown by said statement; that he said to defendant "it looked all right" and that finally, believing defendant's statement that the corporation was making a profit of $20,000 a year, he closed the purchase with defendant December 2nd or 3rd, 1904.

There is evidence further tending to show that thereafter plaintiff became treasurer of the corporation, taking the place of the defendant, who was treasurer when the plaintiff bought his stock. Plaintiff was also elected a director. The first week after becoming treasurer the corporation was, as he testifies, "short

on the payroll'' and plaintiff furnished the money to make it up. The same thing happened the next two weeks and it was not long before he found this to be the ordinary condition, until in March following he began to take an active part in the concern and about a month thereafter the company was put into bankruptcy and plaintiff states he was surprised by the appointment of a receiver. The petition in bankruptcy was filed April 5, 1905, and the corporation was adjudged bankrupt April 21st following. A subsequent examination of the books of the bankrupt concern showed the corporation had suffered a loss of $4,750 for the eighteen months preceding the purchase by plaintiff of the defendant's stock in question. Defendant denies making the promises and representations in controversy.

Upon the evidence it was a question of fact for the jury whether the defendant made the statements in question, whether in purchasing the defendant's stock the plaintiff relied upon or was influenced by the defendant's alleged representations, and whether he exercised such ordinary care as the law required to guard against the deception of which there is evidence tending to show the plaintiff was the victim.

In Van Horn v. Keenan, 28 Ill. 445-448, it was said that ''when a party capable of taking care of his own interests makes a bad or losing bargain, the law will not assist him, unless deceit has been practiced against which ordinary prudence could not protect him.'' Whether or not such deceit was practiced was a question of fact upon which the jury's finding is against the defendant. In an action for false representations ''it is not necessary that the false representations should have been the sole or even the predominant motive; it is enough if they had material influence upon the plaintiff, although combined with other motives.'' Safford v. Grout, 120 Mass. 20-25. In Dickinson v. Atkins, 100 Ill. App. 401-406, it was said that ''to sustain an action for deceit, it must be established that the

representations complained of were false; that they related to matters material to the transaction and not solely to promises *in futuro;* that the defendant making the false representations then knew them to be false and that the plaintiff, exercising ordinary prudence, relied upon them as true and to his injury;" citing cases. · "The fraud and the scienter constitute the grounds of the action" for deceit. Holdom v. Ayer, 110 Ill. 448-453.

It is urged that plaintiff should have examined the books of the corporation before purchasing the stock. We do not concur in that contention. It is said in Antle v. Sexton, 137 Ill. 410-414, that "To throw a purchaser out of court in such a case upon the plea that he did not avail himself of the means of knowledge open to him, would be offering a premium on fraud and would be destructive to confidence in business transactions." In the case at bar the books of the corporation were not, so far as appears, offered to plaintiff for examination, and there is no evidence of any intimation or suggestion that he would be permitted to examine them. He was not buying the stock from the corporation, but from a stockholder therein.

The representations in question were not mere expressions of opinion, but statements of what were alleged to be facts, and there is evidence tending to support the contention of plaintiff that the defendant knew them to be false and made them with intent to deceive plaintiff and induce him to buy at a high price stock then practically valueless. The representations were not merely as to the value of the stock itself, which might be deemed a matter of opinion, but as to the assets of the corporation and the extent, volume and earnings of its business, facts which the evidence tends to show must have been within defendant's knowledge. This is not an action to rescind the contract of sale, and authorities cited by defendant's counsel on that subject are not in point.

We find no error in the first instruction complained

of, to the effect that if the jury believed from the evidence the plaintiff had made out his case as laid in his declaration, they must find in his favor. The declaration stated a cause of action and if sustained by the evidence justified a finding for the plaintiff. But it is urged the averment in the declaration that the defendant promised that if plaintiff purchased the defendant's stock he could draw $1,800 per year salary for acting as one of the officers of the corporation was not a representation as to a fact then existing; and that the instruction left it to the jury to determine or conjecture what allegations of the declaration constituted ground of recovery, since the alleged representation referred to was not legally a false representation. The evidence however is open to the construction that the statement as to salary was under the circumstances intended by defendant to be and was not merely an expression of opinion, but in effect a statement of a fact, that the salary of $1,800 was the fixed salary of the office held by defendant as treasurer of the corporation, to which plaintiff would succeed if he became owner of defendant's third of the stock, to which office plaintiff did in fact succeed. Whether so or not, there is evidence sustaining the material averments of the declaration as to false representations.

We find no material error in the instructions complained of nor in the record and there is evidence tending fully to sustain the averments of the declaration. The judgment of the Circuit Court will therefore be affirmed.

*Affirmed.*